## SULLIVAN, MAYOR, ET AL. *v.* CATT ET AL.

[No. 27,605.   Filed January 13, 1942.]

*Edward H. Knight, Michael B. Reddington,* and *Oscar C. Hagemier,* all of Indianapolis, for appellants.

*John A. Royse, Howard P. Travis,* and *Harry E. Riddell,* all of Indianapolis, for appellees.

RICHMAN, J.—The issue to be decided is concisely stated in appellants' assignment of error as follows:

"The court erred in granting a temporary injunction against the appellants, on the ground that section 3a of the Indianapolis General Ordinance No. 47, 1941, was in conflict with Chapter 198, Section 2, page 599 of the published Acts of the General Assembly of Indiana of 1941."

The ordinance is printed in full in appellants' brief, occupying thirty-five pages. It is a public health measure licensing milk dealers and producers authorized under clauses 21 and 45 of § 53 of the Cities and Towns Act of 1905 (ch. 129), § 48-1407, Burns' 1933, § 11432, Baldwin's 1934, and § 214 of said Act as amended in 1937, § 48-7402, Burns' 1933 (Supp.), § 11533, Baldwin's Supp. 1937.

The funds used for enforcement of the ordinance under § 3a thereof are raised in part by license fees based upon the weight of the milk and milk products sold for distribution in the City of Indianapolis. A distributor is required to deduct from the amount due a producer for sales to the distributor the license fees payable by the producer for the privilege of having his milk sold and delivered in the city. Appellees call this the "check-off" system and say it is the exclusive prerogative of the Milk Control Board of the State of Indiana under the proviso in clause 6 of § 2 of ch. 198 of the Acts of 1941, § 15-1705, (6), Burns' 1933 (Supp.), § 3647-8, Baldwin's Supp. 1941. This statute originally enacted in 1935 and amended in 1937, 1939

and 1941 is a marketing measure and (as expressly stated in § 21, § 15-1721, Burns' 1933 [Supp.], § 3647-24, Baldwin's Supp. 1935) is not intended to conflict with any municipal public health regulations. For the purpose of equalizing "producer prices for any marketing area" the Milk Control Board by clause 11 of § 5 of the Act as last amended (§ 15-1705 [11], Burns' 1933, [Supp.], § 3647-8 [11], Baldwin's Supp. 1941) is permitted to "provide for the payment by milk dealers of reasonable check-offs to its own agency, the local milk committee or a producer cooperative . . . for such marketing area, to be used and expended by or under the direction of the local milk committee in checking the quality, butter-fat content and quantity of milk purchased from producers by milk dealers, in providing a market and payment for milk to producers and in increasing the quantity and quality of milk consumed by the public." The board is interested in the quality of the milk because better milk helps maintain a better market. Under this act the board has no responsibility for the health of the community.

By the clause on which appellee relies the board is directed "To cooperate with the health authorities of any city, county or the state concerning the enforcement of sanitary regulations in any marketing area; Provided, however, Said board shall not permit or authorize any sums to be checked off from the funds of any distributor or of any producer to be used to pay for all or any part of the cost of making inspection *of* the health department of any municipality."

The board is given no commission to inspect municipal health departments and obviously the word "of," which we have italicized, should read "for." This, however, is immaterial to the present inquiry.

The important consideration is that the Legislature by this proviso put a limitation on the use of the funds raised pursuant to clause 11 of § 5 by check-off in local marketing areas and required the board to see to it that those funds be not diverted from marketing to sanitary purposes in the cooperation with local health authorities enjoined by the first part of the clause. In other words the proviso was inserted to restrain local marketing committees from misuse of their own funds and the Milk Control Board was specifically enjoined to prevent such misuse. So interpreted the proviso fits logically into the statute of which it is a part.

Appellees admit that as a public health regulation the city has a right to license milk producers whose milk is sold in the city. They make no contention that the license fee required is discriminatory, unreasonable or oppressive. In oral argument they were driven to the position that by this proviso the Legislature reserved for the milk control agencies the exclusive right to raise funds from milk producers by this well known and often used method of collecting dues or fees. It saves the city collection expense and puts no additional burden upon the producer. The distributor who does the collecting and paying no doubt bears extra cost of bookkeeping but he is not here complaining. We see no reason why the Legislature should desire to deprive any governmental agency of a method of raising funds which it approves for the use of cooperative marketing units. The proviso should not be given a distorted meaning wholly at variance with the spirit of the Milk Control Act when there is a logical interpretation in perfect harmony with the purpose of that law.

The decree is reversed.

NOTE.—Reported in 38 N. E. (2d) 568.